**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DONNA M. AUGUSTE,

      Plaintiff-Appellee,

v.

JAMES A. ALDERDEN, individually
and in his official capacity as Sheriff
of Larimer County; JAMES
SULLIVAN, individually and in his
official capacity as Investigator,
Larimer County Sheriff's Office;
JOHN NEWHOUSE, individually and
in his official capacity as
Investigator, Larimer County
Sheriff's Office; ROGER BARTRAM
individually and in his official
capacity as Investigator, Larimer
County Sheriff's Office; THOMAS
WILSON, individually and in his
official as capacity Investigator,
Office of the District Attorney, Santa
Clara County,

      Defendants,

and

BENJAMIN FIELD, individually and
in his official capacity as Deputy
District Attorney for Santa Clara
County,

      Defendant-Appellant.

No. 05-1450
(D.C. No. 03-cv-2256 WYD PAC)
(D. Colorado)

# ORDER AND JUDGMENT[*]

Before **LUCERO**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

Benjamin Field, a Deputy District Attorney in Santa Clara County California, appeals the district court's denial of his summary judgment motion seeking absolute immunity from a civil rights suit brought by Donna Auguste. We affirm.

In August of 1998, Damon Auguste was convicted in Santa Clara County, California and sentenced to 18 years and 8 months imprisonment. Benjamin Field prosecuted Mr. Auguste and later participated in the state's defense of a habeas action filed by Mr. Auguste. In the process of preparing the state's habeas defense, Mr. Field and Thomas Wilson, an investigator with the Santa Clara District Attorney's Office, executed five search warrants against Mr. Auguste's family members and potential witnesses and their families in California. During a search of Mr. Auguste's mother's home on July 17, 2003, Mr. Wilson seized a letter from Mr. Auguste addressed to Donna M. Auguste, Mr. Auguste's aunt, postmarked September 30, 1998. In the letter, Mr. Auguste expressed his interest

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

in persuading a juror from his original trial to allege misconduct and proposed a plan to bribe jurors if he were retried.

After finding the letter, Mr. Field sought assistance from the Larimer County, Colorado Sheriff's Office in executing a warrant authorizing a search of Donna Auguste's Colorado home. At Mr. Fields's behest, a Larimer County Sheriff's Office investigator submitted an affidavit to the Larimer County District Court in support of the issuance of a warrant. The affidavit recited information relayed by Mr. Wilson. The Colorado court authorized a search warrant which was executed at Ms. Auguste's home on July 24, 2003.

Prior to the execution of the Donna Auguste warrant, on July 18, 2003, the state trial judge presiding over Mr. Auguste's habeas proceedings was apprised of the government's use of search warrants as a means of discovery. In response, the state court "ordered Respondent go through this Court exclusively for any further search warrants." Rec., vol. II at 364. Mr. Field "replied that he would abide by this order," but, according to the court, "[d]espite [Mr. Field]'s promise to the Court, four days later, on July 22, 2003, [Mr. Field and Mr. Wilson] permitted a Colorado judge to execute a search warrant on" Ms. Auguste's residence. *Id.* The court noted that "the search of [Mr.] Auguste's aunt's residence . . . was made in violation of this Court's order to cease any further warrants without this Court's prior approval," *id.* at 366, and ordered all evidence obtained from all the searches be excluded from an evidentiary hearing in the

habeas proceeding.

Ms. Auguste subsequently filed this § 1983 action against the Sheriff of Larimer County, Colorado, his investigators, and members of the Santa Clara District Attorney's Office, including Mr. Field, in both their official and individual capacities. Specifically, Ms. Auguste alleged the search warrant executed at her home was obtained through intentional and false misrepresentations in violation of her constitutional rights under 42 U.S.C. §§ 1981, 1983, and 1985(3). Both the Colorado and California defendants asserted they were entitled to summary judgment based on the doctrines of qualified and absolute immunity. The district court dismissed the § 1985(3) and § 1981 claims for all defendants, and denied claims against all defendants in their official capacities and against all defendants other than Mr. Wilson, Mr. Field, and James Sullivan, a Larimer County investigator, in their personal capacities. The only issue raised in this interlocutory appeal is Mr. Field's contention that the district court erred in denying him the legal protections of absolute immunity.

Although interlocutory appeals are typically disfavored, a public official may appeal the denial of absolute immunity before final judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). The "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). On appeal, we "review *de novo* a district court's conclusion on the question of absolute immunity." *Gagan*

*v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994).

Prosecutors are absolutely immune from suit under § 1983 for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Actions more fittingly characterized as investigative or administrative are protected by absolute immunity only when those acts are "necessary so that a prosecutor may fulfill his function as an officer of the court." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991) (quoting *Snell v. Tunnell,* 920 F.2d 673, 693 (10th Cir. 1990)). "Indeed, we have repeatedly found investigative and administrative actions taken by state prosecutors to be adequately protected by the doctrine of qualified immunity . . . ." *Gagan*, 35 F.3d at 1475.

In drawing the line between absolute and qualified immunity for prosecutors, "we have held the determinative factor is advocacy because that is the prosecutor's main function." *Id.* (quotation omitted). To help define the line,

> we have applied a continuum-based approach to these decisions, stating the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach.

*Id.*

In *Gagan*, we considered the applicability of absolute immunity to a prosecutor who disregarded a state court order made in connection with a federal habeas proceeding. Mr. Gagan had filed pro se a habeas action seeking to

overturn his state court conviction. He filed a motion in state court requesting preparation of transcripts necessary to the development of his federal habeas petition. The state judge granted the motion, but the Assistant Attorney General (AAG) defending the state "allegedly ordered the court reporter not to prepare the transcripts, notwithstanding the state court judge's order to the contrary." *Gagan*, 35 F.3d at 1475. Mr. Gagan filed a § 1983 claim, asserting the AAG's "actions in countermanding the state court judge's order" resulted in a violation of his constitutional rights. *Id.* The district court did not consider the underlying constitutional claim, but concluded instead that the AAG was shielded from § 1983 liability by "the protective umbrella of absolute immunity." *Id.*

Mr. Gagan appealed the district court's application of absolute immunity, and we reversed. In so doing, we stated:

> We find it difficult to see how a prosecutor's actions in contravening the authority of the judicial branch of state government in regard to the defense of a civil action constitute the kind of advocacy related to the initiation and prosecution of criminal proceedings, even under the most generous interpretation of that phrase, to which absolute immunity attaches. Stated alternatively, the actions at issue in this case are simply too far removed on the continuum from the core prosecutorial functions of initiating and pursuing criminal prosecutions to be covered by absolute immunity. We therefore conclude that the Assistant Attorney General has failed to carry her burden of demonstrating her entitlement to absolute immunity . . . .

*Id.* at 1476 (citations omitted). We thus held the AAG in *Gagan* was not entitled to absolute immunity where she defied a Colorado state court order while

-6-

defending a federal habeas action.

In the present case, while defending against Mr. Auguste's state habeas petition, Mr. Field ordered a search warrant executed in Colorado despite the California state court order to the contrary. Our holding in *Gagan* directly addressed the inapplicability of absolute immunity in cases where, like here, the prosecutor defied a state court order in the course of defending against a habeas petition. In light of this directly controlling precedent, we conclude Mr. Field is not entitled to the protection of absolute immunity.

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge